**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

FILED ~

02 JUN 27  PM 3: 05

U.S. DISTRICT COURT
WESTERN DISTRICT MICH.

BY_____

**ROBERT L. JACKSON**

      Plaintiff

v

**STATE OF MICHIGAN**
**MICHIGAN STATE POLICE**
      Defendants

Civil Action
File No. 4:02 CV 126

Hon.  **Robert Holmes Bell**
     **Chief, U.S. District Judge**

---

Donald M. Thinschmidt (P24184)
Donald M. Thinschmidt, P.C.
200 Turwill Lane
Kalamazoo, MI 49006
(616) 343-1208

---

**COMPLAINT FOR DAMAGES**

**WITH JURY DEMAND**

NOW COMES your Plaintiff herein, **Robert L. Jackson** by and through his

Attorney, **Donald M. Thinschmidt, P.C.** by **Donald M. Thinschmidt** and for his

Complaint in the above-entitled matter respectfully represents unto this Honorable Court:

**PARTIES, JURISDICTION AND VENUE**

1)    That at all times herein stated, the Plaintiff is a resident of the State of

    Michigan residing in St. Joseph County, Michigan, with an address of

    1144 Blossom Lane, Sherwood, Michigan.

2)    That at all times herein stated, the Defendant, State of Michigan is a

    governmental body organized and existing pursuant the laws of the United

    States of America with its offices registered in Lansing, Michigan and

LAW OFFICES OF
DONALD M. THINSCHMIDT,
P.C.
200 TURWILL LANE
SUITE 101
KALAMAZOO, MICHIGAN
49006

(616) 343-1208

1

further, subject to the laws and Constitution, as amended of the United States of America.

3) That the Department of State Police for the State of Michigan is a division and department of Defendant, State of Michigan working under its control and direction and at all times relevant employed the investigating officers of an accident in which the Plaintiff was involved on or about June 28, 1996, the subject matter of this lawsuit.

4) That Michael D. Robinson at all times herein stated was the Commanding Officer of the Michigan State Police and at all times relevant was acting in his capacity as the Commander of the Michigan State Police as an employee, agent and representative of the State of Michigan.

5) That Venue herein is proper in that the cause of action complained herein arose in the Western District of Michigan on Ralston Road near Arney Road, in Branch County, Michigan.

6) That Jurisdiction herein is proper in that the Plaintiff is claiming a violation of his United States Constitutional Rights with the Defendants violating his right to equal protection, due process and further a violation of the 5th Amendment to the United States Constitution and further as a result the damages claimed exceed $300,000.00.

## ALLEGATIONS

7) Plaintiff herein re-alleges and incorporates by reference paragraphs 1-6 of the Complaint as though more fully herein stated.

LAW OFFICES OF
DONALD M. THINSCHMIDT,
P.C.
200 TURWILL LANE
SUITE 101
KALAMAZOO, MICHIGAN
49006
(616) 343-1208

2

8)    That on or about June 28, 1996, the Plaintiff herein while legally driving a dune buggy on the State highway was involved in an automobile accident with a Matthew Lee Gilbert.

9)    That as result of said accident, the passenger of the vehicle driven by the Plaintiff herein was killed and further, the Plaintiff sustained severe, debilitating injuries, which have continued to prevent him from returning to the workforce, left him immobile, in braces and physically and emotionally scarred for life.

10)   That on or about June 28, 1996, the Plaintiff herein sustained multiple serious injuries with the same including a crushed left ankle, a cracked left knee a compound fracture of the tibia and fibula as pertains to his right leg and a tearing and soft tissue injury to his right ankle and foot of a severe nature, a compound fracture of the right wrist, head, and back injuries together with severe emotional trauma.

11)   That on such occasion, the State of Michigan, through the Department of the State Police dispatched police officers to investigate, provide immediate care and took such other steps as deemed appropriate for the circumstances.

12)   That the Defendants through their agents undertook an investigation; that while compiling their investigation made determinations clearly erroneous, contrary to the facts and contrary to law while ignoring the obvious.

LAW OFFICES OF
DONALD M. THINSCHMIDT,
P.C.
200 TURWILL LANE
SUITE 101
KALAMAZOO, MICHIGAN
49006
(616) 343-1200

3

13)     That said State Police interviewed Matthew Gilbert, the driver of the other
        vehicle, who was uninjured for information and then while the Plaintiff
        was heavily medicated and sedated at the emergency facility with
        numerous broken and crushed bones, in the late hours of the night, the
        Plaintiff was questioned briefly regarding the accident.

14)     That said State Police never came back to the Plaintiff thereafter for any
        follow up questioning and further never asked for his explanation of the
        accident.

15)     That the Plaintiff continues to be unable to work and under professional
        care with instructions not releasing him yet to the work place for any type
        of gainful employment; He remains disabled.

16)     That the Defendant, State Police, ignored the fact that Matthew Gilbert
        while 17 years of age at the time of such accident, the driver of the other
        vehicle, was drinking alcoholic intoxicants immediately preceding the
        accident and he had open alcohol containers in his vehicle at the time of
        the accident, was driving at an extremely excessive rate of speed in excess
        of 100 mph and further, crossed the median striking the vehicle of the
        Plaintiff herein head on with the passenger of the Plaintiff being killed.

17)     That the Defendant, State Police in undertaking their investigation,
        although being advised and observing that contained in the above
        paragraph never charged Matthew Gilbert with any crime, yet charged the
        Plaintiff herein with negligent homicide.

LAW OFFICES OF
DONALD M. THINSCHMIDT,
P.C.
200 TURWILL LANE
SUITE 101
KALAMAZOO, MICHIGAN
49006
(616) 343-1208

4

18) That as a result of the wrongful actions by the Defendant, State Police, and the Plaintiff herein was charged and forced to defend himself in a negligent homicide criminal proceeding and further, incur substantial expense and attorney fees in such regard.

19) That while the Plaintiff was charged with a negligent homicide and because of such serious charge, lost his driving privileges for a one-year period, no charges of any nature whatsoever were ever filed or otherwise pursued by the state police against Matthew Gilbert, the driver of the other vehicle.

20) No charges were ever brought against Matthew Gilbert even though he admitted the following:

   a) He was a minor as shown by his license, being 17 years at the time of the incident.

   b) He was drinking a beer and driving at the time of the accident.

   c) He had open intoxicants in his vehicle,

   d) He was speeding.

   e) He crossed the centerline, veering to the left directly into the path of the oncoming vehicle.

21) That the Plaintiff herein denied any and all wrongdoing whatsoever, yet, was not interviewed at any length or reasonably asked for his version of what happened and was charged with negligent homicide, which he ultimately defended and a Jury Verdict of Not Guilty was returned.

LAW OFFICES OF
DONALD M. THINSCHMIDT,
P.C.
200 TURWILL LANE
SUITE 101
KALAMAZOO, MICHIGAN
49006
(616) 343-1208

5

## TRIAL BY JURY

30)     That said Plaintiff herein respectfully demands a Trial by Jury in the above

matter.

Wherefore, said Plaintiff respectfully prays for a Judgment in an amount in excess

of $300,00.00 dollars together with his actual attorney fees, costs, and whatever else is

permitted by law together with interest thereon.

I declare under the penalty of perjury that the statements contained in the above

entitled matter is true and accurate to the best of my ability, information, knowledge and

belief.

Dated:  June 27, 2002

Donald M. Thinschmidt (P24184)
Attorney for Plaintiff

LAW OFFICES OF
DONALD M. THINSCHMIDT,
P.C.
200 TURWILL LANE
SUITE 101
KALAMAZOO, MICHIGAN
49006
(616) 343-1208

8

LAW OFFICES OF
# DONALD M. THINSCHMIDT, P. C.

LINDEN WOODS PROFESSIONAL BUILDING
200 TURWILL LANE
SUITE 101
KALAMAZOO, MICHIGAN 49006
TELEPHONE (616) 343-1208
FACSIMILE (616) 343-1207

March 29, 2000

Col. Michael D. Robinson
Michigan State Police
4000 Collins Road
P. O. Box 30633
Lansing, Michigan 48909-8133

RE:   Date of Accident: June 28, 1996
      My Client: Robert Leon Jackson
      Date of Birth: 01/23/58
      Michigan Driver's License: J 250-745-507-062
      Michigan State Police Accident Report: 059-0002014-96
      File Class: 93001

Dear Mr. Robinson:

This office and writer represents Robert Leon Jackson in a civil matter, which has arisen from the above-referenced incident. I would respectfully ask, at this time, that you obtain your copy of such Michigan State Police Accident Report file to follow along with all that has transpired relative to this call.

In reviewing the facts, the scientific evidence, and also listening to the testimony throughout the criminal proceedings in this matter and reviewing depositions taken, it becomes obviously apparent that many deficiencies, together with inaccuracies, existed in the investigation; and further, it is truly believed that your staff, conducting the investigation, were biased in their investigation, with them prejudging what exactly

DONALD M. THINSCHMIDT, P.C.

happened, and thereafter becoming totally non-responsive and derelict in their duties as an objective investigatory body.  As a result of such erroneous work and disregard for the true facts, they have contributed significantly in the financial, together with the psychological, ruin of my client, Robert Leon Jackson.

Your agency concluded my client was responsible for the vehicular death of his passenger, Shannon Blackman, who also was his cousin, age 20 years.  As a result, family relationships have been completely destroyed and my client has expended, for his defense of the criminal charges arising from such accident, in excess of SIXTY-TWO THOUSAND ($62,000) DOLLARS, the end result of which he was determined "not guilty".

Further, in this regard it should be noted that not only has Robert Leon Jackson been totally physically disabled, as a result of this accident, but additionally was forced to liquidate all of his assets to defend himself.  Additionally, because of his obligations, many bills are now with collection companies and much to his frustration, he is without any resources and continues receiving dunning collection letters, lawsuits, and garnishments on funds he doesn't have.  He was an extremely skilled craftsman, working with wood before the accident.  However, he has now sold all of his tools and equipment in a futile attempt to raise money to pay his creditors and their collectors off.  Not only has he attempted to use all his assets to satisfy creditors; but also, he has borrowed substantial amounts of money from the family to continue his existence with no knowledge of when he will be able to repay them their loans.  Also, the credit cards were maximized in an attempt to

DONALD M. THINSCHMIDT, P.C.

afford the cost of living. No one can realize what this individual has been faced with because of such development. This problem is further compounded by the fact that, as a result of the accident, Robert Leon Jackson is now totally disabled from a physical standpoint as well as a psychological standpoint.

Initially, it is my intent to raise serious questions about the professionalism and completeness exhibited in the accident investigation and incorrect conclusions drawn therefrom. I believe your staff wrongfully charged and destroyed a good person, as a result of inappropriate handling and erroneous speculative conclusions. Needless to say, Five (5) different and separate State Police Officers contributed to this travesty, as well as failing to properly follow-up and review the conclusions as determined by the Pathologist.

In a review of the accident report, issue has to be raised in the manner in which it was conducted, as well as the conclusions drawn and action taken. I also understand that before any charges are formalized against an individual such report has to be reviewed by the Prosecuting Attorney. He, too, was derelict in his review of the facts and totally wrong for not imposing additional requirements and requests on your investigative body, as well as the manner in which this case was pursued.

In looking at the accident report, as supplemented, the proofs, and the testimony it is important to note the following to wit:

DONALD M. THINSCHMIDT, P.C.

(a)     It is believed that the speed of the vehicle driven by Matthew Gilbert was totally disregarded.  It should be noted that the claim of Matthew Gilbert that he was driving 65 miles per hour in one statement and 60 miles per hour in another statement.  Then at the Preliminary Exam, he claimed he was driving 55 miles per hour.  Before any impact occurred, the State Police calculated speed on 90 feet 8 inches of SKID by Mathew Gilbert done by Sergeant Kerns, although 101 feet was actual and which was testified to by Trevor King at the Preliminary Exam.  It is important to note the force of the Gilbert impact on the Jackson dune buggy, which had just pulled into its own lane going the opposite direction from an access drive.  The dune buggy was probably going 10-15 miles per hour in the opposite direction.  However, with impact, the dune buggy of Robert Jackson was pushed backward 84 feet to the nearest wheel and the Gilbert vehicle thereafter continued into and through an earthen bank, taking out small trees and leaving a trench through such area of approximately 25 to 30 feet, thereafter rolling over and coming to rest approximately 150 feet from what they (State Police) determined as the "impact sight".  The actual speed limit on the roadway involved herein was 55 miles per hour.


b)     The Gilbert vehicle was a 1988 Buick Regal Limited, 2.8 liter, fuel injected engine, with good tires and good brakes.  The weight of the vehicle was approximately 3,250 pounds, and the dune buggy was a weight of approximately 1,500 pounds.

DONALD M. THINSCHMIDT, P.C.

c)       It is now important to note the location where impact is claimed to

have occurred.  Trooper King testified, as an investigator, that at the time of impact the

Jackson vehicle was located in the middle of the road, although Robert Jackson's vehicle in

actuality and at impact was exclusively in the lane that Robert Jackson was supposed to be

located within.  Trooper King erroneously took location from where the Jackson vehicle had

been pushed placing him over the last skids from impact, which was actually the location

where the vehicle involved herein parted from each other.  This was totally erroneous with

Trooper King further determining that the dune buggy was struck on the side, yet all the facts

truly indicate that impact was head-on with Matthew Gilbert being in the wrong lane.

Sergeant Kerns also indicated that the accident was head-on.  Further, the front wheel and

tire conditions support a head-on collision, as does the Pathology Report of the autopsy of

Shannon Blackman.   All indicators exhibit a head-on crash in Robert Jackson's lane.

Sergeant Kerns, in his report, page 3, paragraph 2 states, "It is apparent to the undersigned

Officer that the Buick struck the driver's side front corner of the Volkswagon and passed

from that corner toward the driver's seat and then angled from the driver's side front toward

the passenger front door".

Trooper King even testified that the front axle was bent-up over and

back in the direction of the passenger's compartment.  If this were a side collision, such

would have been bent to the side.

DONALD M. THINSCHMIDT, P.C.

Matthew Gilbert, in a recent deposition, a copy of which in enclosed herewith, also indicated on Page 28 that impact occurred on the front end of the dune buggy; further, acknowledging that the front end of the dune buggy was already over on the Northbound lane. Continuing with the testimony of Matthew Gilbert it was asked of him, to which he responded: *"My understanding from your testimony was that the dune buggy, the front end of the dune buggy was already in the North bound lane, it had already crossed over the centerline?"* Response, "Yes". *"What kind of brakes did you have?"* Response, "Four wheel disc brakes." *"And they were functional and in good operating condition?"* Response, "They were brand new, just replaced." *"This was pretty much a head-on collision was it not?"* Response, "Pretty close, yes. I hit his front tire with mine...." *"How were the treads on your tires?"* Response, "The tires were new. I would say maybe 10,000 miles on them." *"Do you remember looking at this vehicle directly in front of you just before you were impacting with it?"* Response, "Yes". *"Did you drink the alcohol in front of Lou Ann Shook?"* Response, "She was sitting next to me. Yes, I did." *"Were you drinking Budweiser that day?"* Response, "Yes". *"Approximately how far away from Mr. Jackson were you when you first saw him in front of you, do you recall?"* Response, "About the time I hit my brakes." *"Approximately, how far was that sir?"* Response, "Maybe 50 feet. I'm not quite sure how far it was exactly." *"Did you ever have your license restricted?"* Response, "No, I haven't." *"Did you ever have your license suspended?"* Response, "No, not that I recall." *"How fast does this Buick go?"* Response, "I would imagine as fast as you could want it to." *"What's the fastest you've ever had it up to, the Buick going to?"* Response, "70 miles per hour." *"You never had it over 70, is that your testimony today?"* Response, "Correct." *"Did you*

DONALD M. THINSCHMIDT, P.C.

*have a beer in your hand at the time of the accident?"* Response, "No.*" "Where was the*

*beer?"* Response, "Stuck between the seats." *"Where was Lou Ann's beer?"* Response, "I

would imagine between her legs." *"Did you have your seat belt on?"* Response, "No." *"Did*

*you receive a citation coming out of this?"* Response, "No."

Needless to say there is something grossly wrong with this entire setting.

Technically, if one was crossing the road and hadn't gotten all the way across, Matthew

Gilbert should have veered to the right.   However, in this instance, if you look back

technically and factually at this accident, you will note from the actual original impact

marks/gouges that the dune buggy was already fully across the road, headed Northbound, in

its proper lane when Matthew Gilbert crossed the centerline causing impact with Robert

Jackson and the death of Shannon Blackman.  He even admitted speeding to the police in his

interview with them.

Troopers King and Paul were very one-sided in their investigation.   While

conducting their investigation, they openly ignored the fact that Matthew Gilbert, at the time

of the accident, was 17-years-old, was drinking alcohol, and driving.   He had open

intoxicants in the vehicle, his passenger was drinking, he was speeding recklessly, and

wrongfully crossed the centerline causing a fatality, also while driving did not even have his

seatbelt connected.  What is wrong with this picture?

DONALD M. THINSCHMIDT, P.C.

However, when Lou Ann Shook was interviewed at the scene she stated that Matthew Gilbert, who was her driver, had no alcohol that she was aware of, although both had been drinking and driving together, while talking for about ½ hour. Further, the Trooper found a SIX (6) pack, which came from the Gilbert vehicle, of which THREE (3) were still full, TWO (2) were near empty with remnants of fresh beer and ONE (1) bottle was unaccounted for. These two people openly lied to the Police investigating the scene and got away with it.

The dune buggy was properly operable and legally licensed on the road. Trooper King, during the criminal case against Robert Jackson who was charged with negligent homicide and had his license pulled for ONE (1) year, was informed that it was against the law for Jackson having no front brakes. However, this is not correct. His license was suspended for ONE (1) year, also pursuant the request of Troopers King and Paul, even though he passed the written test as well as the road test. Trooper King also failed to advise, at the Hearing, that Matthew Gilbert, at age 17, was driving with excessive speed and at the time of the accident had been consuming alcohol.

Trooper King, although being an investigator on the scene, failed to measure where the steering assembly of the dune buggy was located. Although he measured where Robert Jackson's glasses ended up, he further failed to measure the first gouges in the road from the initial impact location. He also ignored the additional 25-foot gouge, which had been dug as a result of Matthew Gilbert's vehicle plowing up and deeply gouging the Eastern

DONALD M. THINSCHMIDT, P. C.

bank, which even included taking out of the ground or otherwise severing, actual trees, as well as weeds and other plantings.  Also, although Trooper King in his report (Page 6, Paragraph 2) states the steering portion of the vehicle, along with the front axle, was bent-up over and back in the direction of the passenger compartment.  This statement clearly indicates a frontal collision, yet in the Trial, he stated, "the dune buggy was hit from the side and fits like a puzzle".  If it were hit from the side, it would have been sideways, not up, over and back.  The front rim of the driver's side of the dune buggy was bent into a "v" shape in one spot.  This "v" shape was even on both sides of the rim indicating its impact resulting from a head-on crash.  This occurred when Matthew Gilbert's bumper impacted the wheel and tire.  Since the "v" shape is even on both sides again supports being hit head-on at the same angle.

It is further acknowledged that Trooper King thereafter took pictures from his patrol vehicle to represent a line of sight of Robert Jackson in his dune buggy.  It was totally ignored that the dune buggy was considerably lower in stature that such vehicle and further the driver's seat was also significantly lower, thereby providing an entirely different line of vision than that perceived from the patrol vehicle.  While testifying Trooper King ignored the obvious and thereafter began fabricating to support his theory, with totally unfounded facts.  Even the wheel-base and suspension system of these two vehicles was significantly different, thereby causing the Police cruiser to naturally set higher than the dune buggy.  Although seat height of the dune buggy was measured after the accident, there was no attempt by either Trooper King or Trooper Paul to determine actual seat height before the accident.  They also

DONALD M. THINSCHMIDT, P.C.

had access to Sergeant Kerns, who was conducting reconstruction of the accident. However, this was never followed up.

Both Lou Ann Shook and Matthew Gilbert testified that they turned onto Ralston Road from M-60, yet other reliable witnesses, with no interest at stake, testified that Matthew Gilbert turned onto Ralston Road from Blossom Road and "took off fast". Interestingly Troopers King and Paul wrote in their report that Robert Jackson should have stopped before entering the roadway. Matthew Gilbert testified that he did not even see the Robert Jackson vehicle until he crested on the road. Robert Jackson claims he stopped. Matthew Gilbert, however, at the Preliminary Exam said that Robert Jackson did not stop, in spite of Mr. Jackson's insistence. However, Matthew Gilbert also said they were coming from a different direction, they were speeding and they later were not speeding and also he didn't know if Lou Ann was drinking with him in the car. Lou Ann testified that she wasn't aware he had any alcohol, although seated next to it and him, at a time he admitted separately he had been drinking. Yet, in spite of the blatant lies and inconsistencies, Troopers King and Paul sided with Matthew Gilbert against Robert Jackson. Further, although Robert Jackson repeatedly stated he stopped before entering the roadway, it was totally ignored and as well the line of sight from the field that it is claimed he came from, Troopers Paul and King indicated it to be a cornfield when, in fact, it was obviously grass. There had never been corn in that area.

DONALD M. THINSCHMIDT, P. C.

        Trooper King, while taking his photographs, totally failed to take any of the initial impact area. These were also omitted from his written report and were never even measured. There, uncontrovertibly, were gouges for point of initial impact completely in the Northbound lane. These were left out. Sergeant Kerns stated in his report that the access road, which Robert Jackson came from, was near the top of the grade. The access road is clearly on the other side of such crest thereby creating a situation wherein vehicles traveling on the road from the access are coming down a slight grade from the open field. "Near the top" is totally misleading and not properly informative. In actuality, the access road comes onto Ralston Road, over the crest of the hill on the backside of the grade. It is important for you to look closely at the overall picture before drawing conclusions, which may be wrong.

        I think it is also important to note that the alleged interview with my client at the hospital occurred at a time when Trooper Calahan was advised by the nurse attending Robert Jackson at the time that he was heavily sedated and medicated, not really cognizant of what was happening or his surroundings. This was also supported by observation of the two sisters of Robert Jackson, who were present and observing what the Officer was attempting. The situation already being totally inappropriate was compounded by the fact that the Trooper incorrectly logged information provided. He inserted and made record of statements, which in fact had never been given. He claims his interview occurred sometime after 10:00 p.m., yet the nurse's notes indicate his presence just one time at approximately 12:35 a.m. The accident occurred at 9:25 p.m. and Robert Jackson sustained serious and debilitating physical injuries, which included two broken legs, both of which had been

DONALD M. THINSCHMIDT, P. C.

shattered below the knee, which legs both were in such condition steel had been inserted into both. He also had a compound fracture of his right wrist. He had many other injuries to himself, as a result of such accident, and initially his condition was considered life threatening. The Trooper never came back to follow-up or otherwise verify his initial conversation with Robert Jackson. What compounds the situation is that the Trooper, in this one interview, took down information incorrectly and twisted it as he so was inclined. What he took down was not what had been said or otherwise, in any way, represented to him as occurring.

My client, to say the least, had a reasonable expectation of a fair and objective accident investigation. Such, in our opinion, never occurred and as a result, he financially has lost everything, emotionally is attempting to piece his life back together, and physically is now totally disabled. We are only thankful, at this time, that he was never married and never had children.

I would truly appreciate your looking into this matter and getting back with you at your earliest convenience. Thank you for your consideration.

Very truly yours,

DONALD M. THINSCHMIDT, P. C.

Donald M. Thinschmidt

DMT/jel

Authority: 1949 PA 300, Sec. 257.622
Compliance: Required.
Penalty: $100 and/or 90 days

Form _____ Of _____

UD-10 (1-94)

ORI: MI- 1 3 0 4 3 0 0

File Class 59-2014-96

9300-1

# STATE OF MICHIGAN
## Traffic Crash Report

| Crash Date | | | Crash Time |
|---|---|---|---|
| Month | Day | Year | Military |
| 0 6 | 2 8 9 6 | | 21 2 5 |

Department Name

## Michigan State Police

Complaint Disposition — Open / Closed

Reviewer

**Crash Type**
1. Single Motor Vehicle
2. Head On
3. Head On-Left Turn
4. Angle
5. Rear End
6. Rear End-Left Turn
7. Rear End-Right Turn
8. Sideswipe-Same
9. Sideswipe-Opposite
10. Other/Unknown

No. of Units: 1 2 3 4 5 6 7 8 9

**Special Circumstances**
1. None
2. Deer
3. School Bus
4. Hit and Run
5. Fleeing Police

**Special Study**
1. Local
2. State

**Weather** (Mark Only One)
1. Clear
2. Cloudy
3. Fog Smoke
4. Rain
5. Snow Blowing Snow
6. Severe Wind
7. Sleet Hail
8. Other Unknown

**Light** (Mark Only One)
1. Daylight
2. Dawn
3. Dusk
4. Dark-Lighted
5. Dark-Unlighted
6. Other Unknown

**Fatal** (Report All)
Corrected Copy
Replace (Entire Report)
Delete (Entire Report)
Non-Traffic Area
ORV/ Snowmobile

| County | City/Twp |
|---|---|
| 1 2 1 5 | |

**Traffic Control**
1. Signal
2. Stop Sign
3. Yield Sign
4. None of These

**Construction Zone (If applicable)** (Mark One From Each Group)
Type
1. Const. Maint.
2. Utility

Lane Closed
1. Yes
2. No

**Activity**
1. On Road
2. Off Road
3. None

**Relation to Roadway** (Location of First Impact)
1. On Road
2. Median
3. Shoulder
4. Outside of Shoulder Curb
5. Gore
6. Other
Unknown

Area

**Road Condition** (Mark One)
1. Dry
2. Wet
3. Icy
4. Snowy
5. Muddy
6. Slushy
7. Debris
8. Other
Unknown

Total Lanes: 2

Speed Limit: Posted

**Location on**

Name: Ralston Rd

4/10  FT / MI   North / South   East / West   Beginning of Ramp / End of Ramp

Intersection: Arney Rd

| Unit Number | State | Driver License Number | | | | Date of Birth | | | License Type | Sex | Hazard Action |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | M I | J 250 745 507 062 | | | | 0 1 | 2 3 5 8 | | | | |

Unit Number: 1 2 3 4 5   6 7 8 9

First Name / Middle / Last

Robert Leon Jackson

Street Address: 143 Blossom Rd   Phone Number: 432-3797

Position: 1   Restraint: 05   Ambulance/Hospital: Life Care/Community

| City | State | Zip |
|---|---|---|
| Sherwood | Mi | 49040 |

Injury / Ejected (Trapped) / Citation Issued
1. Hazardous
2. Other

**Alcohol** — HBD — E (train)
**Test Type** — Field — Yes / No — PBT
**Breath / Urine / Blood** — Refused / Not Offered — **Test Results** (Submit Results To FARS When Available)

**Airbag Deployed**
1. Yes   2. No
3. Not Equipped

Total Occup

Unit Type: MV

Vehicle Registration: FKT87   State: M I   VIN: 1132738581

Vehicle Description (year, make, color): 1973 Volks Dune Buggy

Insurance: Farmers Group

Towed To/By: Bowers/Colon

**Vehicle Direction**: North / East / South / West

**Vehicle Type**: PA / CY / VA / MC / PU / CC / ST / SM / Other / Truck Bus (Complete Truck/Bus Section)

**Vehicle Use**: 1 2 3 4 5 6 7 8 9 10 11

**Special Vehicles**: 1 2 3 4 5 6

**Vehicle Defect**: 1 2 3 4 5 6 7 8 9 10 11

**Private Trailer Type**: 1 2 3 4 5 6

First Impact: 8   Extent of Vehicle Damage: 0 1 2 3 4 5 6 7 8 9 10 11 12
Driveable: Yes / No

First Name / Middle / Last

Shannon Renee Blackman

Street Address: 903 Ralston Rd   Phone Number:

| City | State | Zip |
|---|---|---|
| Colon | Mi | 49040 |

| Date of Birth | | | Sex | Ejected (Trapped) |
|---|---|---|---|---|
| Month | Day | Year | | |
| 0 6 | 2 6 | 8 6 | | |

Injury
Pos.: 3   Rest.: 05   Ambulance/Hospital: ------

**Airbag Deployed**
1. Yes   2. No
3. Not Equipped

First Name / Middle / Last

Street Address:

| City | State | Zip |
|---|---|---|

| Date of Birth | | | Sex | Ejected (Trapped) |
|---|---|---|---|---|
| Month | Day | Year | | |

Injury
Pos.   Rest.   Ambulance/Hospital

**Airbag Deployed**
1. Yes   2. No
3. Not Equipped

Owner Name / Address / Phone Number / Age / Pos. / Rest.

Person Advised of Damaged Traffic Control

Damaged Property   Public Owner & Phone

UD-10 Form Number: 4449257   Form Override Number

Forward Original To: Michigan Department of State Police, Criminal Justice Data Center, 7150 Harris Drive, Lansing, MI 48913

Do Not Write or Mark On This Side of The Line

# Unit Number

| | Month | Day | Year | | Action |
|---|---|---|---|---|---|
| | 0 | 7 | 21 | | 8 |

**Position** 1 **Rest.** 05 **Sought Own**

**Injury** K

**Citation Issued**

**Airbag Deployed**

First Name **Matthew** Middle **Lee** Last **Gilbert**

Street Address **55575 Old Shannon Rd** Phone Number **432-2776**

Unit Type City **Colon** State **Mi** Zip **49040**

Alcohol **HBD** Yes No Test Type **Field** Start Urine Test Results **03**

Vehicle Registration **GDL021** State **M I** VIN **2G4WD14W8J1418973**

**88 Buick 2 Dr Gray**

Insurance **Auto Owners** Towed To/By **Bowers/Colon**

Location of Greatest Damage

First Impact **2** Extent of Vehicle Damage Driveable No

First Name **Lou** Middle **Ann** Last **Shook**

Street Address **33711 Chipper Dr**

City **Colon** State **Mi** Zip **49040**

| Month | Day | Year |
|---|---|---|
| 1 0 | 3 1 | 6 0 |

Pos. **3** Rest. **05** Ambulance/Hospital **Life Care/CHC**

---

## Crash Diagram and Remarks



Field Area

Ralston

Driver #1

Veh#2 S.B. on Ralston Rd. Vehicle #1 pulls onto Ralston Rd from driveway to field. As Veh #1 starts across road, Veh #2 locks brakes and starts into left lane. Impact then occurs Veh #1 then goes back south because of force from impact and driver is thrown from vehicle. Vehicle #2 runs off left side of road and rolls over, coming to rest in N.B. lane with front end in ditch.

UD-10 Form Number **4449257** Investigated at Scene Reported Date/Time **6-28-96 @ 9:30 PM** **King** Investigator Name(s) & Badge # (Print Only) **TPRS PAUL & KING** **1401**

UD-109C(Rev. 11-86)
Michigan Department of
State Police

**ORIGINAL INCIDENT REPORT**  Page  1

| | | |
|---|---|---|
| **ORIGINAL DATE** 06/28/1996 | **CIDENT NO.** 059 –   2014-96 | |
| **TIME RECEIVED** 09:30P | **FILE CLASS** 93001 | |

| **WORK UNIT** COLDWATER POST | **COUNTY** BRANCH |
|---|---|
| **COMPLAINANT** STEPHANIE MARINO | **TELEPHONE NO.** 616-432-4212 |
| **ADDRESS: STREET AND NO.** 890 RALSTON RD | **CITY** SHERWOOD | **STATE** MI | **ZIP** 49089 |

**INCIDENT STATUS**

| 0 | OPEN |
|---|---|

**NATURE OF INCIDENT**

# TRAFFIC CRASH

**VENUE:**  RALSTON ROAD, SOUTH OF ARNEY ROAD, SHERWOOD TWP.

DATE AND TIME:  6/28/96 @ 9:25 PM

INFORMATION: THE COMPLAINANT REPORTED HEARING AN ACCIDENT NEAR HER HOME.  THE UNDERSIGNED DISPATCHED ON A P.I ACCIDENT.

ARRIVAL:  UPON ARRIVING AT THE SCENE, THE UNDERSIGNED OBSERVED TWO VEHICLES.  ONE BEING A GRAY BUICK WHICH WAS SITTING ACROSS THE ROAD (EAST/WEST), WITH ITS FRONT WHEELS IN THE DITCH AREA ON THE EAST SIDE OF THE ROAD.  THE REAR OF THE VEHICLE WAS COMPLETELY BLOCKING THE NORTH BOUND LANE.  THE DRIVER OF THAT CAR WAS SITTING ON THE GROUND NEXT TO THE OPEN DOOR WITH HIS HEAD ON THE EDGE OF THE DRIVERS SEAT. HE APPEARED NOT TO BE INJURED.

THE OTHER VEHICLE INVOLVED IN THE ACCIDENT WAS ON THE WEST SHOULDER OF THE ROAD, FACING SOUTH.  THIS VEHICLE IS BEST DESCRIBED AS A DUNE BUGGY, WHICH IS AN ASSEMBLED VEHICLE, BUILT FOR OFF THE ROAD ACTIVITIES, HOWEVER IT DID HAVE A LICENSE FOR ROAD OPERATION.  IN THE PASSENGER SEAT OF THIS VEHICLE, WAS A FEMALE SUBJECT, WHICH WAS COVERED WITH A SHEET.  THE UNDERSIGNED PULLED BACK THE SHEET AND CHECKED FOR SIGNS OF LIFE.  NO HEART BEAT OR RESPIRATION WAS OBSERVED. ALSO AN UNKNOWN PERSON STANDING NEXT TO THE BODY INDICATED THAT SHE WAS NOT ALIVE.

ACROSS THE ROAD ON THE EAST SHOULDER LAYING ON THE GROUND, ON HIS BACK, WAS A MALE SUBJECT.  THERE WERE PERSONS AT HIS LOCATION ATTENDING TO HIM.  HE APPEAR TO BE SERIOUSLY INJURED, HOWEVER HE WAS ALERT AND TALKING.  THIS WAS LATER DETERMINED TO THE DRIVER OF THE VEHICLE WHICH ALSO CONTAIN THE DECEASED FEMALE.

ALSO ON THE SHOULDER TO THE SOUTH OF THE MALE WHO WAS DESCRIBED ABOVE, WAS ANOTHER INJURED PERSON.  THIS FEMALE WAS SITTING ON THE GROUND ABOUT HALF WAY BETWEEN THE INJURED MALE AND THE BUICK.  SHE HAD SOME BLOOD VISIBLE ON THE RIGHT SIDE OF HER HEAD AND ON HER RIGHT KNEE. SHE WAS ALERT AND TALKING.  SHE COMPLAINED OF PAIN IN HER LEG.

| **PAGE** 1 | **INVESTIGATED BY** TPR        PAUL | **REPORTED BY** | **REVIEWED BY** |
|---|---|---|---|

Michigan Department of
State Police

ORIGINAL INCIDENT
REPORT    Page   2

| ORIGINAL DATE | ICIDENT NO. |
|---|---|
| 06/28/1996 | 059 -    2014-96 |
| TIME RECEIVED | FILE CLASS |
| 09:30P | 93001 |

ADDITIONAL AMBULANCE REQUESTED:  CENTRAL DISPATCH WAS ADVISED OF THE
FATAL INJURY AND THE NEED FOR A SECOND AMBULANCE.

STATEMENT:  THE DRIVER OF THE BUICK, MATTHEW GILBERT, WAS VERY UPSET
AND TOTAL THE UNDERSIGNED THAT HE HAD DRANK "ONE BEER" AND NOW HE WAS
GOING TO BE IN TROUBLE.

AMBULANCE:  LIFE CARE.  THE DRIVER LAYING ON THE GROUND (ROBERT
JACKSON)  WAS TRANSPORTED TO COMMUNITY HOSPITAL IN BATTLE CREEK.

THE FEMALE PASSENGER (LOU ANN SHOOK) IN THE BUICK, WHO WAS SEATED ON
THE GROUND WAS TRANSPORTED TO COLDWATER HOSPITAL.

THE MEDICAL PERSONNEL FROM THE FIRST AMBULANCE CHECKED THE FEMALE IN
THE DUNE BUGGY FOR VITALS AND DETERMINED THAT THERE WAS NO SIGNS OF
LIFE.

ASSISTING AT SCENE WITH TRAFFIC: SHERWOOD FIRE DEPARTMENT.

ACCIDENT INVESTIGATOR:  TPR KING WAS CALLED TO SCENE.

ASSISTING OFFICER:  TPR CAHALAN ALSO ASSISTED AT SCENE.

DECEASED PASSENGER:  SHANNON RENEE BLACKMAN, W F, 6/26/76, 903
RALSTON ROAD, COLON, MI 49040  (VEHICLE #1)

NEXT OF KIN:  NOLAN BLACKMAN, 909 RALSTON ROAD, COLON, MI 49040.
616-432-3860.  BLACKMAN CAME TO THE SCENE, WHERE HE RECEIVED
INFORMATION ABOUT HIS DAUGHTERS DEATH.

SEAT BELT USE:  THE DRIVER OF THE BUICK (MATTHEW GILBERT)  ADVISED
THAT NEITHER HIS PASSENGER (SHOOK), NOR HIMSELF WERE WEARING SEAT
BELTS.  IT SHOULD BE NOTED THAT THERE WERE TWO DAMAGED AREAS IN THE
WINDSHIELD OF THE BUICK, WHICH INDICATE THAT BOTH THE DRIVER AND
PASSENGER STRUCK THE WINDSHIELD.

THE DECEASED (BLACKMAN)  WAS STILL SEATED IN THE PASSENGER SEAT
OF THE DUNE BUGGY.  SHE WAS OBSERVED NOT TO HAVE A SEAT BELT ON.  THE
DRIVER WAS THROWN FROM THE VEHICLE.  THE BUGGY WAS EQUIPPED WITH SEAT
BELTS.

SCENE DESCRIPTION:  THE VEHICLES BOTH REACHED A FINAL RESTING POINT
WHICH WAS SOUTH OF WHERE THEY CAME TOGETHER.  LOCATED ON THE WEST SIDE
OF THE ROAD, IS A GRAVEL DRIVE WHICH GOES TO A FIELD.  THE DRIVE DOES
HAVE AN INCLINE TO THE WEST.  LOCATED IN THE ROAD TO THE NORTH OF THE
INTERSECTION OF THIS DRIVE AND THE ROAD, WAS TWO GOUGE MARKS.  THESE
MARKS ARE ON THE EAST SIDE OF THE CENTER LINE.  IT APPEARS THAT THIS
IS THE AREA WHERE THE IMPACT OCCURRED.  THERE WAS A BALL CAP LAYING IN
THE ROAD NEXT TO THE GOUGE MARKS.

| PAGE | INVESTIGATED BY | REPORTED BY | REVIEWED BY |
|---|---|---|---|
| 2 | TPR      PAUL | | |

UD-109C (Rev 11-86)
Michigan Department of
State Police

ORIGINAL INCIDENT
REPORT   Page   3

| ORIGINAL DATE 06/28/1996 | | CIDENT NO. 059 - 2014-96 |
|---|---|---|
| TIME RECEIVED 09:30P | | FILE CLASS 93001 |

FROM THIS LOCATION THE VEHICLE REACHED A FINAL RESTING POINT TO THE
SOUTH.  THE DAMAGE TO THE BUICK ALSO INDICATED THAT THE VEHICLE DID
ROLL OVER.

THE STEERING WHEEL TO THE DUNE BUGGY WAS LOCATED ALONG THE WEST SIDE
OF THE ROAD, TO THE NORTH OF WHERE THE DUNE BUGGY CAME TO REST.  ALSO
LOCATED IN THE ROAD WAS THE RIMS OF A PAIR OF GLASSES.  THESE WERE
WIRE RIM GLASSES.
(SEE REPORT FROM TPR KING AS TO HIS FINDINGS)

PHOTOS:  TAKEN OF SCENE BY TPR KING.

MEDICAL PERSONNEL ON SCENE:  TROY JONES, LIFE CARE AMBULANCE.

MEASUREMENTS:  TAKEN BY TPR KING.

DEPUTY MEDICAL EXAMINER:  SGT JEFFERY FROM THE BRANCH COUNTY SHERIFF
DEPARTMENT WAS SUMMONED TO THE SCENE, WHERE HE ACTED ON BEHALF OF THE
MEDICAL EXAMINER.

FUNERAL HOME:  SCHIPPERS FUNERAL HOME FROM COLON CAME TO THE SCENE AND
PICKED UP THE DECEASED.  THEY WERE ADVISED THAT A POST WAS GOING TO BE
CONDUCTED SATURDAY MORNING IN GRAND RAPIDS, AND THAT THEY WOULD NEED
TO PROVIDE TRANSPORTATION.

WITNESSES:  LEROY JONES, 757 E DIVISION, SHERWOOD, MI 49089
JAMIE PARGA, 33272 FACTORYVILLE ROAD, ATHENS, MI 49011

THE WITNESSES WERE TOGETHER AT THE TIME OF THE ACCIDENT.  THEY STATED
THAT THEY DID NOT SEE THE VEHICLE STRIKE ONE ANOTHER, HOWEVER THEY DID
SEE A CLOUD OF DUST AT THE TIME OF IMPACT.  THEY WERE SOME OF THE
FIRST PERSONS ON THE SCENE.

ALCOHOL LOCATED:  FOUND NEXT TO THE LEFT FRONT TIRE OF THE BUICK, WAS
A BUDWEISER 6 BOTTLE CARTON.  ON THE GROUND NEAR IT WERE THREE FULL
BOTTLES OF BUDWEISER AND ONE BOTTLE OPEN WITH A SMALL AMOUNT OF FRESH
BEER INSIDE.  ALSO LOCATED UNDER THE DRIVERS SEAT OF THE BUICK WAS ONE
OPEN BOTTLE OF BUDWEISER BEER, WITH A SMALL AMOUNT OF FRESH BEER
INSIDE.

ELOP: FATAL REPORT MADE TO ELOP BY CENTRAL DISPATCH.

UD-10:  COMPLETED.

DRIVERS: VEHICLE #1  ROBERT LEON JACKSON, W F, 1/23/58, 143 BLOSSOM
RD, SHERWOOD, MI 49090

VEHICLE #2  MATTHEW LEE GILBERT, W M, 7-27-78, 55575 OLD SHANNON RD,
COLON, MI 49040

INJURED PASSENGER:  VEHICLE #2  LOU ANN SHOOK, 1-/31/60, 33711 CHIPPER
DR, COLON, MI 49040

| PAGE | INVESTIGATED BY | REPORTED BY | REVIEWED BY |
|---|---|---|---|
| 3 | TPR          PAUL | | |

UD-109C(Rev 11-86)

Michigan Department of
State Police

ORIGINAL INCIDENT
REPORT    Page    4

| ORIGINAL DATE | CIDENT NO. |
|---|---|
| 06/28/1996 | 059 – 2014–96 |
| TIME RECEIVED | FILE CLASS |
| 09:30P | 93001 |

STATUS:   OPEN.

| PAGE | INVESTIGATED BY | REPORTED BY | REVIEWED BY |
|---|---|---|---|
| 4 | TPR      PAUL | | |

| MICHIGAN STATE POLICE | ORIGINAL DATE<br>Fri, Jun 28, 1996 | INCIDENT NO.<br>059-0002014-96 |
|---|---|---|
| SUPPLEMENTAL INCIDENT<br>REPORT  0001 | SUPPLEMENTARY DATE<br>Sat, Jun 29, 1996 | FILE CLASS<br>93001 |

| INCIDENT STATUS |
|---|
| Open |

## Accident, Traffic

JOURNAL:
NONE.

INTERVIEW DRIVER (GILBERT):
MATTHEW LEE GILBERT, W/M, 7/27/78, 55575 OLD SHANNON RD. COLON, MI 49040.   MI OLN
G-416-589-497-589.

GILBERT  WAS INTERVIEWED AT APPROX. 10:00P IN THE PATROL CAR AT THE SCENE BY THE
U/S.

GILBERT STATED HE WAS DRIVING A SILVER  '88 BUICK 2DR, MI REG. GDL021  SOUTH
BOUND ON RALSTON AT APPROX. 9:25P 6/28/96, WHEN THE COLLISION OCCURRED.

GILBERT STATED HE ARRIVED AT  LOU ANN SHOOK'S (W/F, 10-31-60) RESIDENCE ( 33711
CHIPPER DR. COLON,  MI 49040) AT APPROX. 8:45P.  HE WENT THERE BECAUSE SHE NEEDED
SOMEONE  TO TALK TO ABOUT HER MARITAL PROBLEMS.   GILBERT SAID THEY LEFT THE
RESIDENCE APPROX. 15 MIN. LATER TO GO  DRIVING AROUND "JUST TALKING".

GILBERT ADVISED HE HAD CONSUMED 1 12 oz BOTTLE OF BUDWEISER BEER 1 HR. BEFORE
GOING TO SHOOK'S RESIDENCE.  HE SAID HE OPENED A SECOND BEER AS THEY WERE
DRIVING AROUND, ALSO A 12oz BOTTLE OF BUDWEISER BEER.   GILBERT STATED HE NEVER
FINISHED THE SECOND BEER.  ACCORDING TO GILBERT SHOOK HAD BEEN DRINKING BEER
AT HER HOME BEFORE THEY LEFT, HE IS UNSURE IF SHE HAD ONE WHILE THEY WERE
DRIVING AROUND.   GILBERT STATED THE BEER BOTTLES CAN FROM A SIX PACK THAT HE
HAD BROUGHT WITH HIM.

GILBERT STATED THEY RETURNING TO SHOOK'S RESIDENCE WHEN THE COLLISION
OCCURRED.  GILBERT SAID HE WAS TRAVELING AT APPROX. 60-65 MPH WHEN THE DUNE
BUGGY PULLED OUT INTO THE ROAD.   THE BUGGY ENTERED THE ROAD FROM THE WEST
DIRECTLY  INTO GILBERT'S PATH.  HE STATED "IT SCARED HIM" AND HE SLAMMED ON HIS
BRAKES.  HE ALSO ATTEMPTED TO STEER AROUND THE BUGGY BUT WAS UNABLE TO DO
SO.   GILBERT STATED HE HIT THE BUGGY AS HE WAS TRYING TO STEER AROUND IT.
GILBERT SAID THE BUGGY "DID NOT EVEN STOP WHEN IT LEFT THE DRIVE".

GILBERT STATED HE WAS APPROX. 50 YRDS FROM THE DRIVE WHEN HE SAW THE BUGGY
PULL INTO THE ROAD.

| PAGE<br>1 | INVESTIGATED BY<br>TPR. MICHAEL J. CAHALAN | REPORTED BY | REVIEWED BY |
|---|---|---|---|

| MICHIGAN STATE POLICE | ORIGINAL DATE<br>Fri, Jun 28, 1996 | INCIDENT NO.<br>059-0002014-96 |
|---|---|---|
| SUPPLEMENTAL INCIDENT<br>REPORT  0001 | SUPPLEMENTARY DATE<br>Sat, Jun 29, 1996 | FILE CLASS<br>93001 |

## PBT RESULTS:

TPR. CAHALAN ADMINISTERED A PBT TEST TO GILBERT.   GILBERT WAS READ HIS PBT RIGHTS AND AGREED TO TAKE THE PBT.

THE RESULTS OF THE PBT WERE .03.

## INTERVIEW DRIVER OF BUGGY (JACKSON):

ROBERT LEON JACKSON, W/M, 1/23/58, 143 BLOSSOM RD SHERWOOD, MI 49089.  TX: 432-3797 JACKSON WAS INTERVIEWED AT COMMUNITY HOSPITAL IN BATTLE CREEK.

JACKSON STATED HE WAS WORKING ON THE THROTTLE CABLE OF THE DUNE BUGGY EARLIER THAT DAY.  HE STATED HE FIXED IT AND TOOK THE BUGGY OUT FOR A "LEISURE CRUISE" WITH SHANNON BLACKMAN (W/F, 6/26/76, 903 RALSTON RD. COLON, MI 49040) AT 5 OR 6 PM.

JACKSON STATED HE HAD CONSUMED 3 12 oz BOTTLES MICHELOB LITE BEERS EARLIER THAT DAY.  2 WITH LUNCH AT APPROX. 3:00P AND 1 LATER AS HE WORKED ON THE BUGGY,  HE COULD NOT GIVE A TIME.  JACKSON STATED HE DID NOT HAVE ANY BEER WHILE IN THE BUGGY.

JACKSON SAID HE WENT OUT WITH BLACKMAN IN THE BUGGY INTO A FIELD ON RALSTON RD.  THEY WERE RIDING AROUND IN THE BUGGY FOR A COUPLE HOURS BEFORE THEY DECIDED TO GO HOME.  THEY WERE GOING TO TURN NORTH ON RALSTON FROM THE FIELD.

JACKSON ADVISED HE CAME TO THE DRIVE THAT EXITS THE FIELD ONTO RALSTON RD. AND  CAME TO A COMPLETE STOP, LOOKING BOTH WAYS BEFORE ENTERING INTO  THE ROAD.  JACKSON STATED THE  OTHER VEHICLE WAS IN A DIP AT THE BOTTOM OF THE HILL WHEN HE LOOKED, SO HE DID NOT SEE IT.  JACKSON SAID HE PULLED OUT THEN "GASSED IT INSTEAD OF STOPPING" WHEN HE SAW THE VEH. COME ACROSS THE RISE.  HE SAID HE DID NOT STOP BECAUSE HE THOUGHT HE COULD MAKE IT ACROSS THE ROAD AND INTO THE DITCH ON THE EAST SIDE OF THE ROAD.

JACKSON  STATED HE HAD MADE IT ACROSS THE ROAD INTO THE NORTH BOUND LANE BUT THE OTHER VEH. SWERVED AND CAME ACROSS THE CENTER LINE INTO "HIS" LANE HITTING THE BUGGY.  JACKSON STATED HE HAD "IT CLEAR WHEN SHE CAME ACROSS". HE SAID "IF SHE (THE OTHER DRIVER) WOULD HAVE STAYED IN HER LANE THIS NEVER WOULD HAVE HAPPENED".

THE INTERVIEW WAS CONCLUDED WHEN JACKSON WAS TAKEN TO SURGERY.  A BAC WAS ORDERED BY THE DR. IN CHARGE.  THE RESULTS WILL HAVE TO BE SUBPOENAED.

## STATUS:
OPEN.

| PAGE<br>2 | INVESTIGATED BY<br>TPR. MICHAEL J. CAHALAN | REPORTED BY | REVIEWED BY |
|---|---|---|---|

ID-110C(Rev 11-86)
Michigan Department of
State Police

SUPPLEMENTAL INCIDENT
REPORT    Page    5

| ORIGINAL DATE 06/28/1996 | .CIDENT NO. 059 –    2014-96 |
|---|---|
| SUPPLEMENTAL DATE 07/1 /1996 | FILE CLASS 93001 |

**INCIDENT STATUS**

| 0 | OPEN |
|---|---|

**NATURE OF INCIDENT**

# TRAFFIC CRASH

**JOURNAL:**
    None.

**INFORMATION:**
    The undersigned was called to the scene of a Fatal Crash on Ralston Rd. south of Arney Rd. in Sherwood Township.

**WEATHER:**
    At the time the undersigned arrived at the scene the weather was warm with the temperature in the high 70's. The sky was clear and there was almost a full moon. The visibility was good.

**SCENE:**
    Upon arriving at the scene there was a dune buggy on the west shoulder of the road. In the dune buggy was the body of a female in the passengers seat. There was also the body of a small dog. It was apparent that the passenger had massive injuries.
    On the east side of the roadway there was a 88 Buick 2 door, gray in color and the flashers were going.
    There were gouge marks and skid marks on the pavement as well as a blood stain.
    There was also a pair of broken glasses, ball cap and tennis shoe located at various locations along the roadway.
    The road itself was of asphalt construction and appeared to have been tarred and chipped at some point in time in the past. There was no shoulder. The pavement went right to grass at the edge of the pavement. The grass had been mowed back.
    At the west shoulder near the crash site there was a dirt drive coming out of a field on the went side of the road. This was coming off a hill.
    The road itself runs north and south and contains severs hills. Where the impact took place was near the top of one of the hills.
    On the east side of the road there was a bank after leaving the paved portion of the road way.

**PHOTOGRAPHS:**
    The undersigned took photographs of the scene, and vehicles.

| PAGE | INVESTIGATED BY | REPORTED BY | REVIEWED BY |
|---|---|---|---|
| 5 | TPR.      KING TPR      PAUL | | |